## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KOJO ASSASEPA, et al.,                                  Case No. 1:11-cv-156
      Plaintiffs,                                       Barrett, J.
                                              Litkovitz, M.J.

vs.

                                              **REPORT AND**
JPMORGAN CHASE BANK, et al.,                  **RECOMMENDATION**
      Defendants.

Kojo Assasepa and Mooya Ollie Assasepa (plaintiffs) bring this action pro se against defendant Chase and twenty John/Jane Doe defendants alleging that Chase and the Doe defendants illegally foreclosed on their home in violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq*., and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq*. This action is before the Court on defendant JPMorgan Chase Bank's (Chase) motion to dismiss plaintiffs' complaint (Doc. 13), plaintiffs' memorandum in opposition (Doc. 15), and Chase's reply. (Doc. 17). Further, this matter is before the court on the parties' responses to the Court's November 22, 2011 Order to Show Cause why this matter should not be stayed in light of plaintiff Mooya Ollie Assasepa's concurrent bankruptcy petition.[1] (Doc. 18).

## I. MOTION TO DISMISS

Plaintiffs raise federal TILA and RESPA claims, as well as state fraud claims and an action to quiet title, against Chase and the Doe defendants. Chase moves to dismiss the complaint under Rule 12(b)(1) and (6), Fed. R. Civ. P., on the grounds that the Court lacks subject matter jurisdiction as plaintiff's claims are barred by the *Rooker-Feldman* doctrine and, further, that the complaint fails to state a claim upon which relief can be granted. For the following reasons, Chase's motion to dismiss should be granted.

---

[1] *See In re Mooya Ollie Assasepa*, No. 1:11-bk-11422 (Bankr. S.D. Ohio 2011).

A.     Standard of Law

Rule 12(b)(1) allows dismissal of complaints where the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss pursuant to Rule 12, the Court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974). *See also Erickson v. Pardus,* 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007).

Plaintiffs bear the burden of proving jurisdiction in order to survive a motion to dismiss on the ground of lack of subject matter jurisdiction. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003); *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n., Inc.*, 287 F.3d 568, 573 (6th Cir. 2002); *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990). "In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Nichols*, 318 F.3d at 677 (citing *Rogers v. Stratton Industries*, 798 F.2d 913, 916 (6th Cir. 1986)).

To avoid dismissal under Rule 12(b)(6) for failure to state a claim, plaintiffs' complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While the Court must accept all well-pleaded factual allegations as true, it need not "accept as true a legal conclusion couched as a factual

allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Although plaintiffs need not plead specific facts, their statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson,* 551 U.S. at 93 (citations omitted). Plaintiffs' factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Twombly,* 550 U.S. at 556. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). With these principles in mind, the Court reviews plaintiffs' complaint.

B.    Factual Allegations

Plaintiffs allege that defendants wrongfully foreclosed on their home in violation of TILA and RESPA. (Doc. 1, Ex. 1, p. 5). Plaintiffs' complaint also includes a fraud claim and an action to quiet title. *Id.* at 13. The complaint contains large portions of the United States Code which have been copied verbatim into the pleading. The "First Cause of Action: The Wrongful and Illegal Foreclosure of Plaintiffs Home Conducted in Violation of TILA, Right to Cancel,

RESPA, and Fraud in the Factum Due to Robo Signing of Foreclosure Documents, and Sold Promissory Note" contains what appears to be the entirety of 15 U.S.C. § 1635, the Right of Rescission as to Certain Transactions, and parts of 12 U.S.C. § 226.15 (TILA's "Regulation Z") with certain portions of the statutes emphasized.  *Id*. at 5-9.  Plaintiffs then allege that, in compliance with these statutes, they mailed a rescission notice to Washington Mutual Bank ("WAMU") obligating the bank to deliver to them, within twenty days of the date of the notice of rescission, a monetary payment and reconveyance of the deed.[2]  *Id*. at 9-10.

Plaintiffs further allege that they made "recission balance/tender of payment in the amount of $475,000.00" to WAMU and that WAMU did not take possession of the money or property within the statutory time period, allowing plaintiffs to keep their home with "no further obligation."  *Id*. at 10-11.  Plaintiffs claim that defendants illegally commenced a nonjudicial foreclosure on the property in violation of their obligations under TILA and Regulation Z and that plaintiffs' home was sold at a foreclosure sale.  *Id*. at 11-12.  Plaintiffs allege they repeatedly attempted to contact defendants via telephone and letter demanding itemized accountings of charges and amounts alleged to be due under unidentified "Loans," but that defendants refused to provide these requested items.  *Id*. at 13.  Plaintiffs also claim that defendants committed intentional fraud by having a "Robo Signer" record various unidentified documents.[3]

In their "Second Cause of Action: Default of Private Administrative Process Tort Claim to Quite (sic) Title," plaintiffs allege that defendants have not responded to their correspondence regarding the foreclosure and, accordingly, plaintiffs request judgment against defendants for wrongful foreclosure and requests that the Court set aside and vacate the foreclosure, the sale,

---

[2] Plaintiffs identify that defendant Chase is the successor in interest to Washington Mutual Bank for the purposes of their claims.  (Doc. 1, Ex. 1, p. 5).

[3] The complaint provides a list of instruments, *e.g.*, "Recording Doc. No. 2009-0129031," but the Court is unable to decipher what these documents are or what these numbers designate.

and the deed. *Id.* at 13-14. Plaintiffs' "Third Cause of Action: Temporary Restraining Order Preliminary & Permanent Injunction," seeks to have the Court restrain and enjoin all defendants from asserting ownership, legal rights, or interest in the property at issue. *Id.* at 14-15. The "Fourth Cause of Action: Declaratory Relief," alleges that defendant Chase has refused to honor recording documents and pay liens on the property at issue. *Id.* at 15.

Plaintiffs complaint seeks the following relief: (1) judgment reversing and cancelling the "Notice of Default, Foreclosure, Notice of Trustee's Sale, and Trustee's Deed in the County Recorder's Office;" (2) a temporary restraining order and preliminary and permanent injunctions prohibiting defendants from asserting or transferring any interest in the property, proceeding with any action regarding the property, or making a negative report to any credit reporting agency regarding plaintiffs' "Loan, Note & Trust Deed;" (3) judgment that the foreclosure was not in compliance with various statutes; (4) judgment setting aside, vacating, and declaring void the "Notice of Default, Foreclosure, Notice of Trustee's Sale, and Trustee's Deed in the County Recorder's Office;" (5) an order requiring defendants to return the original promissory note and all money paid to plaintiffs, including a full accounting; (6) costs associated with this litigation, including attorneys' fees; (7) damages in the amount of $20,000.000.00; and (8) payment of stated liens.

C.  <u>Analysis</u>

Defendant Chase moves to dismiss plaintiffs' complaint on the basis that the Court lacks subject matter jurisdiction, citing Fed. R. Civ. P. 12(b)(1), as the claims are barred by the *Rooker-Feldman*[4] doctrine. Further, Chase moves for dismissal under Fed. R. Civ. P. 12(b)(6), arguing that plaintiffs' complaint is indecipherable and does not state a claim for which relief can

---

[4] After *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

be granted.  While plaintiffs' complaint is subject to the pleading standards enunciated above, the

Court recognizes that plaintiffs are prosecuting this matter pro se and, consequently, the

complaint is held to "less stringent standards" and will be liberally construed. *Erickson*, 551

U.S. at 94.

        1)   Rule 12(b)(1) – the *Rooker-Feldman* doctrine

Chase asserts that plaintiffs' claims are barred by the *Rooker-Feldman* doctrine as the

primary relief sought in the complaint is to have the Court set aside, overturn, and/or vacate a

prior judgment regarding the foreclosure of plaintiffs' property.[5]  The *Rooker-Feldman* doctrine

stands for the proposition that parties who lose in state court may not seek federal court review

of the state-court proceedings. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280,

284 (2005). *See also Johnson v. De Grandy*, 512 U.S. 991, 1005-06 (1994) ("[A] party losing in

state court is barred from seeking what in substance would be appellate review of the state

judgment in a United States district court, based on the losing party's claim that the state

judgment itself violates the loser's federal rights." ).  Thus, before this Court can analyze Chase's

Rule 12(b)(6) argument, it is necessary to determine if dismissal under Rule 12(b)(1) is required

for lack of subject matter jurisdiction.

Here, plaintiffs' complaint makes various references to a foreclosure on their property,

including claims that the foreclosure violated their rights under federal laws (TILA and RESPA),

and specifically requests that the Court enter judgments reversing, setting aside, vacating, and

canceling the foreclosure.  (Doc. 1, Ex. 1, p. 15-16).  Chase argues that, taking plaintiffs'

allegations as true, the complaint "purports to attack either the merits of the alleged judgment(s)

or the procedure by which the state court(s) issued the judgment(s)."  (Doc. 13, p. 5). *See Miller*

---

[5] Plaintiffs do not identify the location of this property nor does the complaint provide any specific
information as to when the actions described in the complaint occurred or to what judgment they are referring.

*v. Countrywide Home Loans*, 747 F. Supp. 2d 947, 956-57 (S.D. Ohio 2010) ("If the federal plaintiff seeks to set aside a state judgment, the district court lacks jurisdiction; if plaintiff presents some independent claim then there is jurisdiction, and state law will determine whether the defendant prevails under principles of preclusion.") (citing *GASH Assocs. v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993)).  Accordingly, the Court must determine whether there is an underlying state action precluding plaintiffs' federal claims.

Plaintiffs' response to Chase's motion provides little clarification.  Plaintiffs assert that there "'NEVER' was a state court order judgment authorizing the foreclose (sic) of [their] property." (Doc. 15, p. 2).[6]  Plaintiffs assert that they have no knowledge of a state court judgment authorizing foreclosure of their property and, further, that this Court has jurisdiction based on Ms. Assasepa's bankruptcy petition.  In reply, Chase contends that despite these assertions plaintiffs allege in their complaint that a foreclosure occurred. *See* Doc. 7, Ex. 1, p. 7 ("Defendant illegally . . . commenced Foreclosure of the Notes & Trust Deeds of the Home[.]).

Taking as true the allegations in plaintiffs' complaint, plaintiffs' TILA, RESPA, fraud, and quiet title claims are undeniably related to a foreclosure of some sort.  A case in point is plaintiffs' first cause of action which is titled, "The Wrongful and Illegal *Foreclosure* of Plaintiffs Home Conducted in Violation of TILA, Right to Cancel, RESPA and Fraud in the Factum Due to Robo Signing of *Foreclosure* Documents, and Sold Promissory Note." (Doc. 7, Ex. 1, p. 1) (emphasis added).  Further, the complaint includes word-for-word the contents of 15 U.S.C. § 1635(i) – the statute pertaining to rescission rights in foreclosures.  Notably, 15 U.S.C. § 1635(i) provides the rights of rescission available to an obligor "after the initiation of any

---

[6] As with their initial complaint, plaintiffs' response is in the form of an affidavit.  While the Court is permitted to review affidavits in connection with a 12(b)(1) motion, *see Nichols*, 318 F.3d at 677, what is notable is that the affidavit/response bears a heading "State of California Department of Justice PIU: 403689." (Doc. 15, p. 2). It is unclear why plaintiffs refer to the California Department of Justice in a federal action in the Southern District of

judicial or nonjudicial foreclosure process on the primary dwelling of an obligor securing an

extension of credit . . . ." 15 U.S.C. § 1635(i).  The complaint further alleges:

> Rather than complying with Defendant's mandatory obligations under TILA, and
> Reg Z for the TILA Rescission, instead, Defendant illegally and in violation of
> such statutes which rendered the Trust Deeds automatically void by operation of
> law, commenced Foreclosure of the Notes & Trust Deeds on the home (the
> "Foreclosure") by causing a Notice of Default ("NOD") to be issued, and
> thereafter causing a Notice of Trustee's Sale ("NOS") to be issued have the right
> to cause the Home to be sold at a Foreclosure Sale (the "Foreclosure Sale") [and]
> caused the Home to be sold at the Foreclosure Sale and caused a purported
> Trustee's Deed to be issued to Defendant WAMU Bank,[7] which purported to
> transfer all right, title and interest in and to the Home to [Chase].

(Doc. 7, Ex. 1, pp. 7-8).  Plaintiffs go on to allege that the foreclosure and foreclosure sale were

null and void upon their issuance of a TILA rescission.  *Id.* at 8.  The complaint also includes

allegations that plaintiffs attempted to contact Chase multiple times to determine how much

money was owed and would need to be paid to bring their loans current and out of foreclosure.

*Id.* at 9.  Moreover, plaintiffs' RESPA claim is borne out of their allegation that, "[t]hroughout

the foreclosure, [Chase] refused and failed, and continues to refuse and fail to provide Plaintiff

with the repeatedly requested Lawful Verification and Accounting Statement pursuant to

RESPA."  *Id.*  Clearly, regardless of the position asserted in response to Chase's motion to

dismiss, plaintiffs' claims are undeniably related to a foreclosure of their property.  The Court

must now determine whether, taking as true the facts in the complaint, these claims are barred by

the *Rooker-Feldman* doctrine.

The Supreme Court recently clarified the scope of the *Rooker-Feldman* doctrine and held

that it does not preclude a federal court's subject matter jurisdiction "[i]f a federal plaintiff

presents an independent claim, albeit one that denies a legal conclusion that a state court has

reached in a case to which [the plaintiff] was a party . . . , then there is jurisdiction . . . ." *Exxon*,

---

Ohio.

544 U.S. at 282 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 736, 728 (7th Cir. 1993)). Post-*Exxon*, the Sixth Circuit has "tightened the scope of *Rooker-Feldman*" and distinguishes "between plaintiffs who bring an impermissible attack on a state court judgment – situations in which *Rooker-Feldman* applies – and plaintiffs who assert independent claims before the district court – situations in which *Rooker-Feldman* does not apply." *Pittman v. Cuyahoga Cty. Dept. of Children and Family Srvs.*, 241 F. App'x 285, 287 (6th Cir. 2007) (citing *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)). In explaining this distinction, the Sixth Circuit has noted:

> The inquiry [focuses on] the *source of the injury* the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*Id.* (emphasis in original). Thus, the Court must determine if plaintiffs' federal complaint identifies the foreclosure as the "source of the injury," and is thus barred by *Rooker-Feldman*, or whether plaintiffs' complaint alleges that defendants engaged in some action, other than foreclosure, that would create an independent claim over which this Court can assert jurisdiction.

Here, plaintiffs maintain that their injuries were caused by the actions of defendant Chase and various Does defendants involved with the foreclosure, not by the foreclosure itself. Plaintiffs allege wrongdoing by defendants asserting, for example, that defendants violated plaintiffs' federal rights, refused to provide them with accountings of their debts throughout the foreclosure, and committed fraud by using a Robo Signer to record various instruments. *See* Doc. 7, Ex. 1, pp. 8-9. To the extent that plaintiffs' injuries are based on defendants' allegedly improper conduct throughout the loan and foreclosure periods, and are not caused by the

---

[7] The Court notes that WAMU Bank is not named as a defendant in this action.

foreclosure itself, plaintiffs' claims are not barred by *Rooker-Feldman*. *See Brown v. First Nationwide Mortg. Corp.*, 206 F. App'x 436, 440 (6th Cir. 2006) (holding that *Rooker-Feldman* did not bar plaintiff's claims that defendant bank procured foreclosure by fraud). *See also Hines v. Franklin Savings & Loan*, No. 1:09cv914, 2011 WL 882976, at *3-4 (S.D. Ohio Jan. 31, 2011) (Bowman, M.J.) (Report & Recommendation) (claim seeking reversal of state court judgment of foreclosure barred by the *Rooker-Feldman* doctrine, but independent claims alleging injury as result of state and federal law violations in procurement of underlying mortgage not barred), *adopted*, 2011 WL 886128 (S.D. Ohio Mar. 10, 2011) (Weber, J.); *O'Neal v. Nationstar Mortg.*, No. 1:07cv505, 2008 WL 3007834, at *4-5 (S.D. Ohio Aug. 1, 2008) (Dlott, J.; Black, M.J.) (holding that plaintiff's claim directly attacking state court foreclosure action were barred but that claims that the mortgage loan was improperly procured and executed were not subject to *Rooker-Feldman*).

Despite ostensibly being a party to the foreclosure on plaintiffs' property, Chase's motion to dismiss calls for application of the *Rooker-Feldman* doctrine but provides no specific information about the nature or timing of the alleged foreclosure. Without more information, this Court does not have a sufficient factual basis to hold that plaintiffs' claims are barred. Further, taking as true plaintiffs' allegations and in consideration of their pro se status, the claims raised by plaintiffs appear to concern defendants' conduct and not a state court judgment. Accordingly, the undersigned finds that Chase's argument with regard to subject matter jurisdiction should fail.

2)      Rule 12(b)(6)

Chase's second argument is that plaintiffs' complaint fails to state a claim upon

which relief can be granted and, accordingly, must be dismissed under Federal Rule of Civil Procedure 12(b)(6). Further, Chase argues that plaintiffs' TILA claim is time-barred pursuant to 15 U.S.C. § 1640(e) which provides a one-year statute of limitations for TILA violations. Plaintiffs' response does not address the legal arguments presented in Chase's motion to dismiss. For the following reasons, the undersigned finds that Chase's Rule 12(b)(6) motion to dismiss should be granted.

Plaintiffs' complaint contains four causes of action: (1) The Wrongful and Illegal Foreclosure of Plaintiffs Home Conducted in Violation of TILA, Right to Cancel, RESPA, and Fraud in the Factum Due to Robo Signing of Foreclosure Documents, and Sold Promissory Note[8]; (2) Default of Private Administrative Process Tort Claim to [Quiet] Title; (3) Temporary Restraining Order Preliminary & Permanent Injunction; and (4) Declaratory Relief.

With respect to the TILA and RESPA claims, plaintiffs' complaint provides that one of the plaintiffs mailed a notice of rescission to defendant WAMU[9] citing unspecified TILA violations as the basis for rescission. (Doc. 7, Ex. 1, p. 5). Plaintiffs allege that they made "recission balance/tender of payment in the amount of $475,000.00" to WAMU, but that WAMU did not take possession of the money within 20 days of the offer. *Id.* at p. 6. Plaintiffs further allege that WAMU failed to comply with its obligations under TILA and, instead, improperly commenced a foreclosure action and that their home was subsequently sold at a foreclosure sale. *Id.* at 7. Plaintiffs allege that after the foreclosure sale WAMU transferred its interest in the their home to defendant Chase. *Id.* at 7-8. Plaintiffs further allege that any interest Chase has in the property at issue is null by virtue of the issuance of the rescission notice. *Id.* at 8. The complaint

---

[8] Although plaintiffs have titled this one cause of action, the Court will treat the first cause of action as three separate claims: a claim of a TILA violation, a claim of a RESPA violation, and a fraud claim.

[9] WAMU (Washington Mutual Bank) is not a defendant in this matter. While plaintiffs' complaint identifies that defendant Chase is the successor in interest to WAMU, it remains unclear whether plaintiffs mailed a

includes allegations that plaintiffs repeatedly contacted defendant[10] by telephone and letter requesting an itemized accounting of all amounts alleged to be due and for the amount required to bring the loans current and out of foreclosure. *Id.* at 9. Plaintiffs allege the refusal and failure to provide these accountings is a violation of RESPA. *Id.*

Chase asserts that the TILA claim is time-barred as the statute of limitations for the claim is one year. *See* 15 U.S.C. § 1640(e). Chase argues that the complaint was filed almost three years after the alleged TILA violation occurred. However, the complaint does not provide any specifics with regard to the dates of any of the alleged occurrences, much less the dates of the TILA violations. Moreover, Chase does not identify any document or reference any specific incident from which this Court can determine when the alleged TILA violations occurred. While plaintiffs attached some documents to their complaint, including a "Notice of Right to Rescind" form[11] signed by plaintiff Kojo Assasepa and dated April 9, 2008, it remains unclear from the allegations in the complaint when the alleged TILA violation occurred. As it is impossible to discern from plaintiffs' allegations when the alleged TILA violations occurred, the Court cannot determine whether the TILA claim is barred by the statute of limitations. However, plaintiffs' failure to provide this or any other specific factual information in support of their claims supports a finding that plaintiffs' complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiffs' complaint is 12 pages long with 38 numbered paragraphs, not including the attached documents. The complaint includes long sections of various statutes, yet contains almost no factual allegations regarding any misconduct on behalf of defendant Chase. As this is

---

notice of rescission to Chase or if Chase was otherwise made aware of the notice of rescission.

[10] It is unclear if plaintiffs contacted WAMU or Chase.

[11] *See* Doc. 7, Ex. 2, attachment to plaintiffs' complaint.

a case regarding a foreclosure, it is notable that the complaint fails to even identify the location of the property at issue.

Further, in light of plaintiffs' reference to "defendant WAMU," it is impossible from the pleading to decipher whether WAMU or Chase is the entity responsible for any alleged TILA violations. Regardless, aside from conclusory assertions, plaintiffs have failed to allege any facts to support their conclusory assertions that Chase violated any of the referenced statutes or laws. In light of these deficiencies, the complaint lacks the "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949-50.

Neither plaintiffs' complaint nor their briefing present any actual facts concerning the elements required to prove violations of TILA or RESPA; rather, they contain conclusory assertions that some entity, whether it be WAMU or Chase, violated a statute without providing any specific information as to how or when the violation occurred. Accordingly, under the pleading standards enunciated in *Iqbal* and *Twombly*, the complaint fails to state a claim upon which relief may be granted under TILA or RESPA. Even considering plaintiffs' pro se status, the complaint is so deficient in its lack of supporting factual allegations that dismissal is warranted. *See Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 F. App'x 487, 491 (6th Cir. 2005) (affirming dismissal of pro se plaintiffs' complaint due to lack of supporting factual allegations); *Elsman v. Standard Fed. Bank*, 46 F. App'x 792, 799 (6th Cir. 2002) (pro se complaint dismissed for failure to set forth factual allegations supporting the conclusory allegations that defendants engaged in conduct violating TILA and state law claims).

Plaintiffs' claim of fraud is similarly deficient. Plaintiffs allege that defendants committed intentional fraud by having a "Robo Signer" record various instruments. Doc. 7, Ex.

1, p. 9.  The complaint lists several recording documents numbers but does not identify what the documents are recording or to what property the instruments refer.  *Id.*  While "the Court is mindful of reports of financial institutions using so-called 'robo-signers' to improperly sign documents used in the foreclosure process . . . *Twombly* require[s] plaintiffs to set forth more than bare allegations of 'robo-signing' without any other factual support."  *Cerecedes v. U.S. Bankcorp*, No. 11-219 CAS, 2011 WL 2711071, at *5 (C.D. Cal. July 11, 2011) (citation omitted).

Notably, plaintiffs do not dispute that they defaulted on their mortgage.  Plaintiffs do not allege that they were current with their mortgage payments nor do they allege that the documents allegedly "robo-signed" contained false information.  Rather, the complaint includes allegations that plaintiffs were aware of their default and sought to determine the amount owed *after* the foreclosure had taken place.  *See* Doc. 7, Ex. 1, pp. 8-9.  Without more, plaintiffs' conclusory assertions that "robo-signing" occurred are insufficient to establish a claim for fraud.  The complaint fails to include sufficient facts from which this Court can reasonably infer that the foreclosure documents at issue were fraudulently signed or that the alleged "robo-signing" caused the foreclosure; consequently, plaintiffs' fraud claim must fail.  *See Bucy v. Aurora Loan Servs., LLC*, No. 2:10-cv-1050, 2011 WL 1044045, at *6 (S.D. Ohio Mar. 18, 2011) (dismissing fraud claim based in "robo-signing" due to insufficient factual allegations and plaintiff's default on mortgage payments).[12]

---

[12] The Court notes that the *Bucy* case involved the application of Ohio State law in analyzing the sufficiency of that plaintiff's fraud claim.  Here, it appears that the property in question is located in California, which would require the application of California State law.  *See* Doc. 7, Ex. 2, p. 3 (Fax indicating that plaintiff Kojo Assasepa's property address is 22501 Inspiration, Canyon Lake, CA 92587).  However, the complaint fails to identify the location of the property at issue.  This omission is yet another example of the complaint's impermissible vagueness and its failure to meet federal pleading standards regardless of whether California or Ohio state law applies.

Plaintiff's final claim is a claim to quiet title.  A claim to quiet title is a tort claim governed by state law.  In the absence of any remaining federal claims or diversity of citizenship among the parties,[13] this Court is without jurisdiction to oversee plaintiff's quiet title claim.  *Cf. Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 316 (2005) (maintaining jurisdiction over state law quiet title action where claim raised federal questions pertaining to the construction and effect of federal laws).  Here, plaintiffs' quiet title claim appears to involve no more than their interest in retaining or recovering their property.  As such, the Court should decline to maintain jurisdiction over the claim.  *See Faughender v. City of North Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991) (where district court exercised only supplemental jurisdiction over state law claim, it is proper to dismiss state law claims without reaching their merits when federal claims have been dismissed).  Moreover, as with the remainder of plaintiffs' complaint, there are insufficient facts supporting the claim which justifies its dismissal.

Plaintiffs' response brief does little to clarify the bases of their claims.  Moreover, their assertion that there was never a state court order permitting foreclosure fails to acknowledge that their claims rest entirely on allegations that some sort of foreclosure occurred.  The response does not address any of the legal arguments raised by Chase.  While the response includes a request to amend the complaint before it is dismissed, plaintiffs have not provided a copy of a proposed amended complaint nor does their response explain how any amendment would cure the complaint's deficiencies.  Rule 15(a)(2) provides that a party may amend its pleading with leave of court and leave "should be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, a request to amend should be denied as futile where the proposed

---

[13] Plaintiffs' complaint alleges that plaintiffs and defendant Chase are Ohio citizens.  (Doc. 7, Ex. 1, pp. 1, 2).

amendment would not withstand a motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Here, plaintiffs' request to amend is unaccompanied by any proposed amendments or even a general description of what said amendments would include. Accordingly, the request to amend should be denied.

Lastly, plaintiffs' claims against the Doe defendants should be dismissed as well. The complaint alleges that the Doe defendants 1-20 were participants in the action and conduct set forth in the complaint. However, the complaint contains no specific allegations involving any Doe defendant. Similar to the remainder of plaintiffs' complaint, the vague and general statement that the Doe defendants engaged in unspecified improper conduct is insufficient to maintain an action against these Doe defendants. *See Martin v. Bank of America*, No. 3:11-0743, 2011 WL 5826658, at *3, n.5 (M.D. Tenn. Oct. 31, 2011) (Report and Recommendation), *adopted*, 2011 WL 5826679 (M.D. Tenn. Nov. 18, 2011) (dismissing pro se plaintiff's vague claims against Doe defendants where wrongful foreclosure and RESPA claims against named bank defendant dismissed).

For these reasons, the undersigned recommends that plaintiffs' complaint be dismissed in its entirety. In light of this recommendation, the issues raised by the Court and briefed by the parties in response to the November 22, 2011 Show Cause Order are potentially moot. However, the effect of plaintiff Mooya Ollie Assasepa's (Ms. Assasepa) bankruptcy petition on this litigation still merits discussion. In the event that the District Judge declines to adopt the recommendation that plaintiffs' complaint be dismissed in its entirety, the undersigned nevertheless recommends that Ms. Assasepa be judicially estopped from further litigating this matter.

16

## II. SHOW CAUSE ORDER

After becoming aware that Ms. Assasepa had a pending bankruptcy petition, the Court ordered the parties to address the issues regarding automatic stay, judicial estoppel, and standing. *See* 11 U.S.C. § 362 (Bankruptcy Code automatic stay provision); *Guerpo v. Amresco Residential Mortg. Corp.*, 13 F. App'x 649, 650 (9th Cir. 2001) (discussing standing); *Bradley C. Watson v. Online Computer Library Ctr., Inc.*, No. 2:05cv18, 2006 WL 2052080 (S.D. Ohio May 9, 2006) (same); *Clarke v. United Parcel Serv.*, 421 B.R. 436 (W.D. Tenn. 2010) (discussing judicial estoppel).

In response, Chase asserts that the automatic stay provision, 11 U.S.C. § 362, is inapplicable to the instant matter as only actions *against* the debtor are subject to the statute; here, the instant litigation was filed *by* the debtor.  Further, defendant responds that it is not aware of any facts or circumstances that would justify dismissal for lack of standing or the application of the doctrine of judicial estoppel.[14]  (Doc. 19).

Plaintiffs take a slightly different tack in their response.  Plaintiffs assert the automatic stay provision does apply to the instant matter, seemingly requesting that the Court stay the instant litigation.  Plaintiffs also contend their lawsuit is not subject to judicial estoppel and, further, that they have standing to raise their claims against defendant despite the concurrent bankruptcy petition.  (Doc. 20).[15]  Plaintiffs do not cite to any authority in support of their arguments.

For the following reasons, the undersigned finds that: (1) the automatic stay provision, 11

---

[14] Chase's response does not address the cases cited by the Court its show cause order.

[15] Plaintiffs filed several hundred pages of exhibits along with their five-page response the Court's show cause order.  These documents include correspondence to and from third-parties, plaintiffs' affidavits containing allegations of notary fraud against defendants, and out-of-district court filings unrelated to plaintiffs' litigation.  It is unclear how these documents are responsive to this Court's inquiry and, accordingly, they were not considered in making this Report and Recommendation.

U.S.C. § 362, does not apply to this litigation; (2) Ms. Assasepa has standing to bring legal claims on her own behalf; and (3) Ms. Assasepa is judicially estopped from litigating this matter due to her failure to list this lawsuit as an asset in her bankruptcy petition.

A.    Automatic Stay

The automatic stay provision of the United States Code provides that where a petition for bankruptcy has been filed under 11 U.S.C. §§ 301, 302, or 303, said petition operates as a stay of:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of this case under this title[.]

11 U.S.C. §362(a)(1).

Here, plaintiffs Kojo and Mooya Ollie Assasepa filed the instant action against defendant JPMorgan Chase Bank and several Doe defendants on March 14, 2011.  (Doc. 1).  That same day, Ms. Assasepa filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Ohio. *In re Mooya Ollie Assasepa*, No. 1:11-bk-11422 (Bankr. S.D. Ohio 2011).  Plaintiff's bankruptcy petition was later converted to a Chapter 13 petition. *Id.* As the instant litigation was filed by plaintiff-debtor Ms. Assasepa, the automatic stay provision does not apply.

The purpose of § 362 was to give "the debtor a breathing spell from [her] creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove [her] to bankruptcy."  11 U.S.C. § 369 (1978 comm. notes).  Clearly, the statute is intended to prevent the debtor from being named as a defendant in a case seeking money

18

damages - not to prevent the debtor from seeking money damages herself.  As plaintiffs provided no argument or authority in support of their contention that the automatic stay provision applies to the instant litigation, their conclusory assertion is insufficient to persuade the undersigned that this matter should be stayed.

The Court finds that the automatic stay provision, 11 U.S.C. § 369, does not apply to the instant matter.

B.    Standing

It is well-settled that a Chapter 7 bankruptcy petitioner does not have standing to raise claims, such as Truth in Lending Act (TILA) claims, seeking property - including legal or equitable interests.  *See Guerpo v. Amresco Residential Mortg. Corp.*, 13 F. App'x 649 (9th Cir. 2001) (holding that bankruptcy petitioner lacked statutory standing to sue because "[w]hen [plaintiff] declared bankruptcy, her property became the property of the bankruptcy estate.  11 U.S.C. § 541(a).  This included 'all legal or equitable interests of the debtor in the property,' *id.* at § 541(a)(1), a phrase that has been interpreted to include causes of action[.]") (citing *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986).  Here, however, plaintiff's Chapter 7 bankruptcy petition was converted to a Chapter 13 petition on July 4, 2011.  *See In re Mooya Ollie Assasepa*, No. 1:11-bk-11422 (Bankr. S.D. Ohio 2011).

The Sixth Circuit has not addressed the issue of whether a Chapter 13 debtor has standing to pursue a cause of action.  However, other circuit courts have held that Chapter 13 debtors retain standing to raise legal claims on their own behalf.  *See Ponton v. AFSCME*, 395 F. App'x 867, 872 n.1 (3d Cir. 2010); *Smith v. Rocket*, 522 F.3d 1080, 1081 (10th Cir. 2008); *Crosby v. Monroe County*, 394 F.3d 1328, 1331 n.1 (11th Cir. 2004); *Cable v. Ivy Tech State College*, 200 F.3d 467, 472-74 (7th Cir. 1999); *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515-

19

16 (2d Cir. 1998).  In making this determination, these courts have noted the differences between a Chapter 7 and Chapter 13 debtor, specifically that "an essential feature of a chapter 13 case is that the debtor retains possession of and may use all of the property of [her] estate, including pre-petition causes of action, pending confirmation of [her] plan." *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1210 n.2 (3d Cir. 1991).  Further, the district judge in this matter has previously found in another case that "the [Chapter 13] debtor has concurrent power with the Chapter 13 trustee to sue and be sued." *Smith v. ABN AMRO Mortg. Group, Inc.*, No. 1:06cv45, 2007 WL 950334, at *6 (S.D. Ohio Mar. 27, 2007) (Barrett, J.) (citing *In re Wirmel*, 134 B.R. 258, 260 (Bankr. S.D. Ohio 1991)).

In light of the above, the undersigned finds that plaintiff Ms. Assasepa has standing as a Chapter 13 debtor to assert her claims.

C.    Judicial Estoppel

The United States Bankruptcy Code requires that debtors must file a "schedule of assets and liabilities, a schedule of income and current expenditures, and a statement of the debtor's financial affairs[.]"  11 U.S.C. § 521(a)(1).  "It is well-settled that a cause of action is an asset that must be scheduled under § 521(1)." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005) (citing *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004)). "[T]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *Id.*  (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)). "Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized." *In re Coastal Plains, Inc.*, 179 F.3d at 208.

The judicial estoppel doctrine "generally prevents a party from prevailing in one phase of

20

a case on an argument and then relying on a contradicting argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal citation omitted). "This doctrine is utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002)).  The Sixth Circuit has held that in the bankruptcy context, "judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Browning*, 283 F.3d at 775 (internal citations and quotations omitted).  "[J]udicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *Id*. at 776.

In order to facilitate the parties' responses on the issue of whether judicial estoppel applies to the instant case, the undersigned provided a citation to *Clarke v. United Parcel Serv.*, 421 B.R. 436 (W.D. Tenn. 2010)[16] (discussing the framework for analyzing judicial estoppel issues in the bankruptcy context) in the Show Cause Order. *See* Doc. 18.  Neither party addressed the *Clarke* decision in their responses.  Instead, plaintiffs assert that judicial estoppel applies only "in matter involving closed bankruptcies wherein the former debtor attempts to lay claim to an asset which was not disclosed on the bankruptcy schedules," and that there are no

---

[16]    In *Clarke*, the plaintiff-debtor filed for bankruptcy in 2005, filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) in 2007, and filed a discrimination lawsuit in 2009. *Clarke*, 421 B.R. at 438-39. Before filing her lawsuit, but after filing the EEOC charge, the *Clarke* plaintiff-debtor moved to alter her bankruptcy payment plan from automatically deducting payments from her payroll citing unemployment; the bankruptcy court granted the motion. *Id*. The *Clarke* plaintiff-debtor failed to amend her bankruptcy Schedule of Personal Property to list the 2009 lawsuit until after the defendant filed a motion to dismiss based on judicial estoppel. *Id*. at 439. The district judge held that judicial estoppel barred the *Clarke* plaintiff-debtor as she had failed to amend her bankruptcy schedules to reflect her lawsuit and as a consequence was "asserting a position in [the discrimination] lawsuit that is contrary to the position she took under oath in a prior proceeding, and the [Bankruptcy Court] already adopted her contrary position in its consideration of her bankruptcy case." *Id*. at 441.

judicial estoppel issues in the instant litigation. (Doc. 20, p. 2). Defendant similarly contends that, given the procedural posture of the bankruptcy petition, judicial estoppel is not applicable at this juncture. (Doc. 19, pp. 2-3). Neither party's arguments are convincing.

Ms. Assasepa filed her bankruptcy petition concurrently with the instant litigation on March 14, 2011. *See* Doc. 1; *In re Mooya Ollie Assasepa*, No. 1:11-bk-11422 (Bankr. S.D. Ohio 2011). At that time, she was proceeding pro se in both matters. *Id.* On March 29, 2011, Ms. Assasepa filed her first Schedule of Personal Property and failed to list this lawsuit as an asset. *See In re Mooya Ollie Assasepa*, No. 1:11-bk-11422 (Doc. 13, pp. 5-8). On July 20, 2011, attorney Stephen P. Rodenbeck filed an appearance on behalf of Ms. Assasepa in her bankruptcy matter. *Id.* at Doc. 41. Subsequently, an amended Schedule of Personal Property was filed on August 26, 2011 which still did not list this lawsuit as an asset. *Id.* at Doc. 56, Ex. 1, pp. 4-7. It was not until October 7, 2011 that Ms. Assasepa first attempted to inform the bankruptcy court of the existence of this lawsuit by filing an amendment to her statement of financial affairs. *Id.* at Doc. 64.[17]

At the moment Ms. Assasepa filed her initial petition, the bankruptcy court entered an order assigning a trustee and scheduling the first meeting of creditors which included a notice to creditors that the bankruptcy case automatically stayed any attempts to collect debts or other actions against Ms. Assasepa. *Id.* at Doc. 7. Prior to listing this lawsuit as an asset, the bankruptcy court granted Ms. Assasepa's motion to convert her Chapter 7 petition to a Chapter 13 petition and placed her on a payment plan. *Id.* at Docs. 38, 40, 48, 57. Further, several creditors' meetings were held before this suit was identified as an asset.[18] *Id.* at Docs. 7, 49. In

---

[17] The amendment also listed a lawsuit in the Superior Court of California, San Bernardino County, Victorville District with the case number C1VVS1102656.

[18] The docket of the bankruptcy matter indicates that the creditors held meetings on April 20, 2011, May 4, 2011, May 18, 2011, June 8, 2011, June 29, 2011, and September 26, 2011.

each instance - the initial bankruptcy filing, filing the schedules of assets, and at creditors' meetings – Ms. Assasepa, under oath and penalty of perjury, failed to identify this lawsuit as an asset. Ms. Assasepa's excuse was that the failure to previously list the lawsuit was inadvertent or a mistake. *Id*. at Doc. 64.

"Two circumstances in which a debtor's failure to disclose might be deemed inadvertent are: (1) 'where the debtor lacks knowledge of the factual basis of the undisclosed claims,' and (2) where 'the debtor has no motive for concealment.'" *White*, 617 F.3d at 476 (quoting *Browning*, 283 F.3d at 776). The Court must also consider whether "the evidence indicates an absence of bad faith." *Id*. at 478. Here, Ms. Assasepa filed the instant lawsuit concurrently with the bankruptcy petition. Ms. Assasepa's "knowledge of the factual basis [of her claims] forecloses a finding of inadvertence due to a lack of knowledge." *Browning*, 283 F.3d at 776. Thus, the only justification for the omission is if Ms. Assasepa had no motive for concealing the lawsuit.

"A motive to conceal can be inferred from the omission itself, because 'by omitting the claims, [the debtor] could keep any proceeds for herself and not have them become part of the bankruptcy estate.'" *Clarke*, 421 B.R. at 441 (citing *Johnson v. Interstate Brands Corp.*, No. 07-227B, 2008 WL 152895, at *4 (W.D. Tenn. Jan. 14, 2008) (quoting *Barger v. City of Cartersville*, 348 F.3d 1289, 1296 (11th Cir. 2003))). Courts generally decline to apply the judicial estoppel doctrine where plaintiff-debtors are able to present evidence indicating that there was no motive to conceal. *See ABN AMRO*, 2007 WL 950334, at *5 (judicial estoppel inappropriate where plaintiffs generically disclosed a legal claim, provided the court with documents indicating the bankruptcy trustee had knowledge of the undisclosed lawsuit, and the trustee submitted status reports to the Bankruptcy Court referencing the undisclosed litigation

23

which, in sum, demonstrated that plaintiffs' failure to disclose was inadvertent); *Eubanks*, 385 F.3d at 898-99 (finding inadvertence where record demonstrated that plaintiff alerted bankruptcy court and trustee to civil claim despite failing to list case on Schedule of Personal Property). Here, however, Ms. Assasepa has not presented any information or evidence to this Court which supports a finding that her failure to disclose this lawsuit was inadvertent.

In fact, the instant record contains no assertion that the omission was inadvertent; rather, this justification was presented only to the bankruptcy court. *See In re Mooya Ollie Assasepa*, No. 1:11-bk-11422 (Doc. 64). Notably, the October 2011 amendment disclosing the lawsuit simply provides that the omission was inadvertent without providing further explanation. *Id.* (Ms. Assasepa "inadvertently failed to list or incorrectly listed all of the required information on the Schedules filed."). Though Ms. Assasepa claimed inadvertence in a one-page amendment filed in her bankruptcy case, she presented no evidence to this Court from which the undersigned can infer that the omission was inadvertent.

Plaintiffs do not cite to any records that demonstrate that the bankruptcy court or trustee was aware of this lawsuit before the October 2011 filing. While Ms. Assasepa's pro se status may have provided some justification for her initial failure to disclose the lawsuit, the fact that the omission continued after she retained an attorney cuts against the conclusion that the omission was an inadvertent result of her ignorance of bankruptcy proceedings. Moreover, even if Ms. Assasepa had remained pro se throughout the proceedings, her failure to list the lawsuit would not be excused simply because she did not have an attorney to walk her through the bankruptcy process. *See Riddle v. Chase Home Finance*, No. 09-11182, 2010 WL 3504020 (E.D. Mich. Sept. 2, 2010) (holding that pro se plaintiff's failure to disclose lawsuit in bankruptcy case was not inadvertent and that she was judicially estopped from pursuing the

lawsuit).  Similar to the proceedings in *Clarke*, the Bankruptcy Court here relied on Ms. Assasepa's statements under oath in granting her motion to convert her bankruptcy petition and setting her payment plan.  Further, the creditors met several times and relied on Ms. Assasepa's incorrect statements regarding her assets for seven months.   These facts support application of judicial estoppel as Ms. Assasepa assumed a position contrary to that asserted under oath in her bankruptcy proceeding and the bankruptcy court adopted this position as a preliminary matter. *White*, 617 F.3d at 478.

Moreover, the evidence at hand is insufficient to find that Ms. Assasepa's omission of the lawsuit as an asset was inadvertent.  As noted above, she clearly had knowledge of this litigation at the time she filed the bankruptcy petition.  The motive for concealment can be inferred from the omission itself and, lastly, the evidence does not demonstrate an absence of bad faith.  *See White*, 617 F.3d at 478 (in determining whether there is an absence of bad faith, courts look at debtor-plaintiff's "attempts to advise the bankruptcy court of her omitted claim").  Here, there is no evidence that plaintiff attempted to inform the bankruptcy court of the instant lawsuit prior to October 2011, after she had her petition converted from a Chapter 7 to Chapter 13 claim and began making payments.  At the point the bankruptcy court began ordering her to make payments and attend meetings of the creditors, it adopted Ms. Assasepa's position that she did not have any undisclosed legal claims.  *Id.* at 479.  Further, there is no any indication that the trustee, the creditors, or the bankruptcy court was aware of this litigation prior to the October 2011 disclosure which might support a finding that Ms. Assasepa had not acted in bad faith.  *See Eubanks*, 385 F.3d at 898-99.  Rather, the fact that Ms. Assasepa received benefits from the bankruptcy proceedings and failed to disclose this lawsuit as an asset, even after retaining counsel, supports application of the doctrine of judicial estoppel in this case.

The Sixth Circuit's recent decision in *White* is instructive. In *White*, the plaintiff failed to disclose her discrimination lawsuit to the bankruptcy court until after the defendants filed a motion to dismiss based on judicial estoppel. *White*, 617 F.3d at 479. Similar to this case, the bankruptcy court in *White* ordered the plaintiff to make payments to the trustee and attend creditor's meetings. *Id.* In support of her contention that the omission was inadvertent and that she had intended to inform the bankruptcy court of the discrimination suit, the *White* plaintiff submitted: an affidavit from her bankruptcy attorney, documents showing that plaintiff had requested counsel for her discrimination claim, and the late amendment disclosing the lawsuit (but not the amount requested). *Id.* at 480-81. Noting that the request for counsel provided some notice to the bankruptcy court that plaintiff had a lawsuit, the Sixth Circuit nevertheless held that plaintiff had not adequately informed the court, the trustee, or creditors of the discrimination claim, nor did the evidence submitted demonstrate an absence of bad faith or support a finding that the omission was inadvertent. *Id.* at 481. Further, the Sixth Circuit did not consider the *White* plaintiff's late disclosure favorably, noting, in part, that the disclosure failed to identify the amount being sought in the discrimination suit, from which the Court inferred an ongoing motive to conceal. *Id.* at 481-82.

Here, Ms. Assasepa made the same omission as the *White* plaintiff and has proffered no evidence whatsoever from which this Court may infer that her omission was inadvertent. Further, even after disclosing the lawsuit, Ms. Assasepa failed to inform the bankruptcy court that the instant lawsuit seeks money damages in excess of $20,000,000.00. Ms. Assasepa's ongoing failure to fully inform the bankruptcy court about her potential legal claims does not support a finding of an absence of bad faith. Ms. Assasepa asserted a position in the bankruptcy court that was contrary to the position she asserted in this litigation and the bankruptcy court

accepted that position. Ms. Assasepa had knowledge of the factual basis of her undisclosed claim and a motive to conceal it. There is no evidence before the Court that excuses the omission. Accordingly, Ms. Assasepa should be judicially estopped from pursuing the instant litigation.

Lastly, plaintiff's unsupported argument that judicial estoppel applies only in cases where the bankruptcy is closed is without merit. Pursuant to filing for bankruptcy, Ms. Assasepa received immediate benefits. Creditors and other parties were precluded from collecting debts or taking other action against her. Relying on Ms. Assasepa's incomplete statements, the bankruptcy court assigned her a trustee, oversaw a payment plan, and convened several creditors' meetings all for Ms. Assasepa's benefit and all before she disclosed this lawsuit as an asset. It is not necessary that Ms. Assasepa's bankruptcy case be discharged (closed) for the judicial estoppel doctrine to apply. Where, as here, a bankruptcy petitioner has received "significant financial benefits," such as being free of debt-collectors and entering a payment plan designed to relieve debts, judicial estoppel is appropriate. Although Ms. Assasepa's "debts may not have been permanently wiped away, a debtor who receives even preliminary benefits from concealing a [lawsuit] from [her] creditors can still be estopped from pursuing the suit in the future." *Williams v. Hainje*, 375 F. App'x 625, 627 (7th Cir. 2010) (collecting cases). As the Seventh Circuit noted:

> To hold otherwise would give debtors an incentive to game the bankruptcy system. Debtors could take a wait-and-see approach to disclosure by prosecuting an undisclosed claim while waiting to see how favorably the bankruptcy proceeding unfolds before discharge. That approach would undermine both the primary aim of judicial estoppel, which is to protect the integrity of the judicial process, and the bankruptcy law's goal of unearthing all assets for the benefit of the creditors.

*Id.* (internal citations omitted).

Ms. Assasepa's omission of this litigation in documents she filed under oath and penalty of perjury is tantamount to a representation that the claim does not exist. *In re Superior Crewboats, Inc.*, 374 F.3d at 335. Her ongoing prosecution of the instant matter is contradictory to her sworn statements to the bankruptcy court. Further, Ms. Assasepa received, at a minimum, preliminary benefits from her bankruptcy petition prior to disclosing this lawsuit. Accordingly, the doctrine of judicial estoppel should be applied to prevent Ms. Assasepa from continuing to prosecute this lawsuit.

For these reasons, the undersigned recommends that plaintiff Mooya Ollie Assasepa be judicially estopped from maintaining her claims against defendants in this matter.

## IT IS THEREFORE RECOMMENDED THAT:

(1) Plaintiff Mooya Ollie Assasepa be judicially estopped from prosecuting this lawsuit;

(2) Defendant Chase's motion to dismiss (Doc. 13) be **GRANTED**;

(3) Plaintiffs' claims against Doe defendants 1 – 20 be **DISMISSED**; and

(4) This matter be **CLOSED** on the docket of the Court.

Date: 1/11/12

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KOJO ASSASEPA, et al.,                                    Case No. 1:11-cv-156
    Plaintiffs,                                       Barrett, J.
                                                Litkovitz, M.J.

vs.

JPMORGAN CHASE BANK, et al.,
    Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 If Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kojo Assasepa
Mooya Ellie Assasepa
PO Box 24486
Cinti, OH 45224

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☑ Agent ☐ Addressee

B. Received by ( *Printed Name* ) | C. Date of Delivery

D. Is delivery address different from Item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☑ Certified Mail ☐ Express Mail
   ☐ Registered ☐ Return Receipt for Merchandise
   ☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
   *(Transfer from service label)*

7003 2260 0002 6723 4408

PS Form **3811**, February 2004     Domestic Return Receipt     102595-02-M-1540